[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 15, 2003
THOMAS K. KAHN
CLERK

_____

No. 02-16635

_____

D. C. Docket No. 01-00121 CV-HLM-4

JOHN CARTER,

Plaintiff-Appellant,

versus

JAMES GALLOWAY, in his
individual capacity, STEVE
UPTON, in his individual capacity,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 15, 2003)

Before EDMONDSON, Chief Judge, COX, Circuit Judge, and PAUL[*], District
Judge.

_____

[*]Honorable Maurice M. Paul, United States District Judge for the Northern District of Florida,
sitting by designation.

PER CURIAM:

While serving a life sentence in Hays State Prison ("Hays"), Plaintiff John Carter was assaulted and stabbed by his cellmate, Termayne Barnes. Plaintiff brought suit pursuant to 42 U.S.C. § 1983 against Defendants James Galloway, the Deputy Warden of Security at Hays, and Steve Upton, the Special Management Unit Manager of Hays, for their alleged deliberate indifference to a substantial risk of serious harm to Plaintiff in violation of the Eighth Amendment.[1]

The district court granted summary judgment for both Defendants. We affirm the judgment of the district court.

I. Background

Plaintiff had been incarcerated at Hays since 1991, serving a life sentence. Hays classified Plaintiff as a medium-security, Level 1 inmate, with no history of violence while in the prison.[2]

---

[1] The Eighth Amendment's ban on cruel and unusual punishment is made applicable to the states by virtue of the Fourteenth Amendment. Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417 (1962).

[2] Hays used a security classification system, assigning inmates as either trusty, minimum, medium, close, or maximum based on a wide range of relevant factors. Hays also used a behavior management system, classifying inmates for certain housing assignment purposes within the general prison population ranging from Level 1 to Level 5--Level 1 being the best-behaved with Level 5

Plaintiff had been assigned to work in the prison library, having had access to the library's computer. Prison officers learned of potential inappropriate use of the library's computer and initiated investigations, involving several inmates and the prison librarians. Defendant Galloway interviewed Plaintiff about involvement in the computer's misuse; Plaintiff did not fully cooperate with Defendant Galloway's investigations.[3] Thereafter, Defendant Galloway placed Plaintiff on involuntary administrative segregation ("admin seg") pending investigation; Plaintiff was taken to the prison's Special Management Unit.[4]

Officer Steve Debord assigned Plaintiff to dorm 2 of Building G in a double-bunked cell that was currently being occupied by Inmate Barnes.[5] Inmate Barnes was assigned to isolation, classified as a close-security, Level 5 inmate. Officer Giles escorted Plaintiff to the cell; and before entering, Plaintiff noticed

---

being the worst-behaved.

[3] In his affidavit, Plaintiff explained that he did not provide all information because he did not want to be a "snitch" and because he did not want to cause trouble for one of the prison librarians.

[4] Hays had Buildings F, G, and H known as the Special Management Unit, or "SMU." Hays regularly kept admin seg inmates in dorms 1 and 2 of Building F and kept isolation inmates and maximum-security inmates in dorms 1 and 2 of Building G. On the occasions when Building F became full, Hays would also use dorm 2 of Building G to house inmates on admin seg status.

[5] Plaintiff was assigned to Building G because another inmate involved in the library computer investigation had already been placed in Building F. Hays had a policy of separating inmates involved with investigations into different dorms pending conclusion of the investigation. The district court viewing the evidence in the light most favorable to Plaintiff, determined that Officer Debord could have assigned Plaintiff to a vacant bed in another cell in Dorm 2 of Building G.

that Inmate Barnes was pending reclassification to maximum-security status. At that time, Plaintiff asked not to be placed in a room with Inmate Barnes, but Officer Giles denied this request.

After Plaintiff's placement with Inmate Barnes, Inmate Barnes notified Plaintiff of an intention to fake a hanging, part of Inmate Barnes's plan for being transferred to the medical prison.[6] Plaintiff refused to assist Inmate Barnes's plans, and Inmate Barnes informed Plaintiff that Plaintiff would help "one way or another." Plaintiff interprets this statement as having been a verbal threat, and this statement is the only evidence Plaintiff references as such a threat. Inmate Barnes also paced the cell like "a caged animal," threatening correctional officers and orderlies -- generally acting in a disorderly manner.

Sometime between 6 May 1999 and 10 May 1999, Plaintiff notified Defendant Galloway that Barnes was acting crazy and planned on faking a hanging. Plaintiff also told of Inmate Barnes's comment that Plaintiff would help in the faked hanging "one way or another."[7]

---

[6]Prior to becoming Plaintiff's cellmate, Inmate Barnes had a record of violence while in incarceration, but he had never previously assaulted a cellmate. Defendants and other Hays officers clearly knew that Inmate Barnes had caused many problems during his prison time.

[7]Plaintiff also put this request to move in writing, in conjunction with a statement Defendant Galloway asked Plaintiff to write about the library computer investigation.

On 10 May 1999, Plaintiff appeared before Defendant Upton for an administrative segregation hearing, where Plaintiff, for the most part, told Upton the same information about Barnes given to Defendant Galloway. Defendant Upton told Plaintiff that no removal would be in order until the library computer investigation came to an end.[8]

On 16 May 1999, Inmate Barnes assaulted Plaintiff, stabbing Plaintiff in the stomach with a "shank" (an inmate-made weapon).

Plaintiff filed this lawsuit on 10 May 2001; on 7 November 2002, following discovery, the district court, finding no genuine issue of material fact, dismissed Plaintiff's claim and granted Defendants' motion for summary judgment.

We review the district court's rulings on motion for summary judgment *de novo*, applying the same legal standards that bound the district court. National Fire Insur. Co. of Hartford v. Fortune Const. Co., 320 F.3d 1260, 1267 (11th Cir. 2003). "The standard of review for a motion of summary judgment is whether a genuine issue exists as to any material fact and whether the moving party is entitled to judgment as a matter of law." Sarfati v. Wood Holly Associates, 874 F.2d 1523, 1525 (11th Cir. 1989); Fed.R.Civ.P. 56.

---

[8]Defendant Upton held the power to move Plaintiff to another dorm room, as Defendant Upton had taken this action on previous occasions with other inmates.

II. Discussion

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828, 114 S.Ct. 1970, 1974 (1994); see Helling v. McKinney, 509 U.S. 25, 113 S.Ct. 2475 (1993). "'[P]rison officials have a duty...to protect prisoners from violence at the hands of other prisoners.'" Farmer, 511 U.S. at 833, 114 S.Ct. at 1976. (quotations and citations omitted). "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." Id. at 834, 114 S.Ct. at 1977.

"An Eighth Amendment violation will occur when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[ ] reasonably to the risk'. . . ." Marsh v. Butler County, Ala., 268 F.3d 1014, 1028 (11th Cir. 2001)(en banc), quoting Farmer, 511 U.S. at 844, 114 S.Ct. at 1982-83. "[T]o survive summary judgment on his section 1983, Eighth Amendment claim, [Plaintiff] was required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference

6

to that risk; and (3) causation." Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995).

Plaintiff asserts that both Defendants were deliberately indifferent by allowing Plaintiff to remain in the cell, allegedly leaving Plaintiff exposed to a substantial risk of serious harm from Inmate Barnes. To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a "'sufficiently culpable state of mind.'" Farmer, 511 U.S. at 834-38, 114 S.Ct. at1977-80; Wilson v. Seiter, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25 (1991). The district court found a lack of sufficient evidence from the summary judgment record to establish Defendants' subjective awareness. We agree.

Defendant Galloway directed that Plaintiff be put on admin seg, causing Plaintiff to be segregated into a different building from another inmate under investigation. Based on the summary judgment record, neither Defendant was involved in placing Defendant with Inmate Barnes. During Plaintiff's time as a cellmate of Inmate Barnes, Defendants' clearly knew that Inmate Barnes was a "problem inmate" with a well-documented history of prison disobedience and had been prone to violence. Defendants also had specific notice from Plaintiff that Inmate Barnes acted crazy, roaming his cell like a "caged animal." But before

7

Defendants' awareness arises to a sufficient level of culpability, there must be much more than mere awareness of Inmate Barnes's generally problematic nature.

Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists -- and the prison official must also "draw that inference." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979. Defendant Galloway, serving as a Deputy Warden, heard many complaints from Plaintiff. But Plaintiff never told Galloway that Plaintiff feared Barnes or that Barnes clearly threatened Plaintiff. Plaintiff complained about Barnes acting crazy, wanting to fake a hanging, and making a statement that Plaintiff would help in the fake hanging "one way or another." Plaintiff made the same complaints to Defendant Upton at the administrative segregation hearing, leaving Defendant Upton unaware of a particularized threat or fear felt by Plaintiff in regards to rooming with Inmate Barnes.

Plaintiff contends that Inmate Barnes's comment that Plaintiff would help with the faked hanging "one way or another" should have apprised Defendants of a substantial risk. Plaintiff contends that Defendants should have understood that statement as having been a threat. This statement does not provide a sufficient basis to make the inferential leap that a substantial risk of serious harm to Plaintiff

8

existed. In reviewing the context of Defendants' notice of Barnes' statement, Plaintiff, based on the summary judgment record, never contended to Defendants that Barnes's statement constituted a threat; nor did Plaintiff make a request for protective custody. To assume that Defendants actually made the inference that Inmate Barnes's statement constituted a serious threat would assume too much. Defendants would have had to read imaginatively all derogatory and argumentative statements made between prisoners to determine whether substantial risks of serious harm exist. We do not view the summary judgment record as supporting a contention that Defendants drew the inference or should have drawn the inference from Barnes's "one way or another" comment as a serious threat, leaving Plaintiff exposed to any substantial risk of serious harm.[9]

Defendants arguably should have placed Plaintiff elsewhere but "merely negligent failure to protect an inmate from attack does not justify liability under section 1983. . . ." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990). Defendants only possessed an awareness of Inmate Barnes's propensity for being a problematic inmate; to find Defendants sufficiently culpable would unduly reduce

---

[9]In his brief, Plaintiff cites Gullate v. Potts, 654 F.2d 1007 (5th Cir. 1981), for the proposition that a general awareness of serious risk was satisfactory. First, Gullate involved significantly different factual circumstances, where the prison officials were using the plaintiff inmate as a "snitch," giving the prison officials a higher level of awareness and responsibility for the risks facing that particular inmate. Second, the United States Supreme Court has further clarified the state of the law in this area since Gullate, leaving the reasoning in Gullate grounded in less-developed law on these issues.

9

awareness to a more objective standard, rather than the required subjective

standard set by the Supreme Court. Such a generalized awareness of risk in these

circumstances does not satisfy the subjective awareness requirement.

Plaintiff has failed to establish that either Defendant had a subjective

awareness of a substantial risk of serious physical threat to Plaintiff; thus, Plaintiff

has failed to establish a required element of this claim.[10]  When viewing the

evidence most favorably toward Plaintiff, a claim for deliberate indifference has

not been established; therefore we affirm the district court's order.

AFFIRMED.

---

[10]The district court also determined that Plaintiff's claim failed on the legal causation element. Given our determination that Defendants' lacked the requisite subjective awareness, we see no reason to discuss the legal causation element.

The district court also addressed Defendants' qualified immunity defense.  Because Plaintiff's deliberate indifference claim fails, Defendants have no need for qualified immunity. If Plaintiff has stated a good deliberate indifference claim, Defendants are entitled to qualified immunity for the law was not clearly established in Plaintiff's favor.