[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-12453
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 12, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-02932-CV-HS-NE

BILLY COMPTON BOLDIN,

Plaintiff-Appellant,

versus

LIMESTONE COUNTY, ALABAMA,
TOMMY RABY, an individual,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(October 12, 2005)

Before BIRCH, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Billy Compton Boldin appeals the district court's grant of summary judgment in favor of Tommy Raby in his 42 U.S.C. § 1983 claim based on violations of Boldin's First Amendment rights.[1] Boldin claims the district court erred by: (1) applying collateral estoppel to preclude him from litigating whether he "willfully" damaged equipment, (2) holding he failed to raise a disputed issue of material fact regarding whether his speech was a substantial motivating factor in the termination of his employment, and (3) holding he failed to raise a material issue of disputed fact regarding Raby's *Mt. Healthy City School District Board of Education v. Doyle*, 97 S. Ct. 568 (1977), defense. We find the district court did not err, and affirm.

## I. BACKGROUND[2]

Limestone County is organized into a district system, and each district has an elected commissioner who supervises the employees in that district. Each commissioner has the authority to hire, discipline, and fire the employees of that district. Boldin was hired by former District One Commissioner Darryl Sammett in 1997 as a temporary operator in the District One road crew. Boldin was later

---

[1] Boldin does not appeal the dismissal of his claims against Limestone County, Alabama, or the dismissal of his equal protection claim against Raby.

[2] Because we are reviewing the district court's grant of summary judgment to Raby, we construe all facts in the light most favorable to the non-moving party, Boldin. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004).

given a full-time position as an operator. As an operator, Boldin bush-hogged, patched roads, hauled materials in trucks, and operated a dump truck and other equipment. Tommy Raby became Boldin's supervisor when he was elected District One Commissioner in 1998.

On October 24, 2001, Boldin was having a problem getting power out of a dump truck, "truck 112." He thought the problem was related to the fuel filter, and reported the problem to his supervisor, Freddie Puckett. Clyde Davis, the county mechanic, replaced the fuel filter. Boldin went home on October 24, 2001, with the understanding the fuel filter had been replaced.

On October 25, 2001, Boldin cranked truck 112 and drove it out of its bay. The truck did not have any power and was not running correctly. Boldin told Puckett this, and asked Puckett what to do. Puckett then spoke to Raby and both Puckett and Raby told Boldin to run the truck until it quit.

As Boldin fueled up and left in truck 112 that morning, Davis, the county mechanic, did not hear that the truck was having any problems. Similarly, Boldin's coworker, Rick Watkins who followed behind Boldin for part of the way to the work site, did not hear any problems with the truck. On his way to the job site, Boldin stopped for a biscuit at a truck stop and Puckett was also there. Boldin did not inform Puckett of any problems with the truck. By the time Boldin

3

arrived at the job site, however, the truck was emitting a loud squeal as it drove and was leaking transmission fluid. District One workers examined the truck's engine and observed the transmission was cracked.

Truck 112 was towed back to the District One shed. Raby asked a mechanic employed by the local GMC dealer to examine the truck and give a cost estimate of repair. The mechanic found several of the truck's transmission gears were broken and estimated it would cost $16,000 to repair. The mechanic told Raby that driver abuse was the likely cause of damage to the truck.

Davis, a mechanic of 20 years, also examined the truck. He observed a hole in the transmission about six inches across. The reverse and first gears were missing teeth. Davis informed Raby he thought driver abuse caused the damage to truck 112. Raby also had Bobby Morris, a mechanic with 35 years' experience, examine the truck and provide a second estimate on the repair job and another opinion on the cause of damage. Morris also found driver abuse was the likely cause of damage. Morris described the damage as major and highly unusual, and concluded the damage could not have been caused by a deterioration of any transmission parts over time or by a chain reaction caused by small problems in the transmission culminating in larger problems over time. The damage also could

4

not have been caused by any problem the transmission might have had on October 24, 2001, the day prior to the discovery of the crack in the truck's transmission.

Boldin took voluntary leave from work on October 26 and 27, 2001. On or about those same days, the District One foreman, Puckett, investigated the cause of damage to the truck. Puckett followed the trail of transmission fluid which had leaked out of the truck. He discovered the trail of leaked transmission fluid started on a road behind a feed store called the Saddle Rack. An employee of the Saddle Rack, Lance Davis, approached Puckett and told him he observed the truck as it passed by the store the previous morning and the truck was making a "real shrill racket."

Boldin returned to work on October 30, 2001. Raby terminated Boldin that day after a phone call from Morris on the cause of the damage to the truck. Limestone County's personnel manual lists "willful damage to public property" as a ground for termination. Raby terminated Boldin under this provision for intentionally damaging the transmission of truck 112. Boldin appealed his termination to the Limestone County Commission. The Commission held a hearing and upheld the termination.

Boldin alleges he was terminated in retaliation for his political expression. In the summer of 1998, Raby ran against Sammett for the District One

Commissioner position. Boldin had Sammett signs on his personal vehicle and campaigned for Sammett. At a cookout prior to the election, Boldin let Raby know that he heard Raby had been saying he was knocking down Raby's signs. Boldin told Raby this was not true. Raby told Boldin to pack up and leave the cookout.

Ronald Lewter, a county employee in another district, testified he and Raby had a conversation in which Raby discussed his dislike of Boldin. In a response to a question from Lewter about the men who worked for him, Raby stated if he could get rid of one employee, Boldin, he would have a good crew. Raby told Lewter he heard Boldin had campaigned against Raby and Boldin had cut down some of Raby's signs. Lewter testified for the next few years Raby would regularly ask Lewter to trade someone on Lewter's crew to Raby for Boldin.

During Boldin's employment, the rear end of a tractor Boldin was operating had to be replaced, and the mechanic told Raby the damage was due to intentional abuse by the driver. Raby questioned Boldin about whether he intentionally abused the tractor, and Boldin denied intentionally abusing the tractor. Raby believed Boldin and did not pursue the matter.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo. *Carter v. Galloway*, 352 F.3d 1346, 1348 (11th Cir. 2003). "'The standard of review for a motion for summary judgment is whether a genuine issue exists as to any material fact and whether the moving party is entitled to judgment as a matter of law.'" *Id.* at 1348–49 (citation omitted).

A. *Collateral estoppel*

Boldin asserts the district court essentially dispensed with his entire case in a footnote reading:

> Boldin argues that his abuse of Unit 112 might not have constituted adequate cause for dismissal because Raby lacked evidence that the damage was "willful" within the meaning of the County's personnel policies. This argument is foreclosed by the County Commission's conclusion that the dismissal was warranted. Limestone County's personnel policies provide for an appeal of disciplinary action to the County Commission ruled in Raby's favor. Accordingly, there is not question that the driver abuse at issue in this case warranted discharge under the County's policies.

Boldin contends although the district court did not explicitly say so, it applied collateral estoppel to preclude him from litigating whether he willfully damaged Truck 112's transmission. We reject this contention. The district court went on to review Boldin's claim, finding abundant evidence that Boldin's abusive driving

7

caused the damage to truck 112's transmission, and did not apply collateral estoppel.

B. *Speech as a substantial motivating factor*

Because Boldin does not contest Raby's termination of him was within the scope of Raby's discretionary authority, he has the burden to show Raby is not entitled to qualified immunity. *See Holloman ex. rel Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). "To overcome qualified immunity, the plaintiff must satisfy a two prong test; he must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id.* Boldin claims Raby violated his rights under the First Amendment of the Constitution. To establish this, Boldin must show (1) his speech was on a manner of public concern, (2) his right to speak on the matter of public concern outweighed his public employer's interest in promoting the efficiency of the services it performs through its employees, (3) his speech played a substantial role in the decision to terminate his employment, and (4) the public employer did not have another valid reason for the adverse employment action. *McKinley v. Kaplan*, 262 F.3d 1146, 1149 (11th Cir. 2001). The district court held Boldin failed to create a genuine issue of material fact on the third prong.

We agree with the district court that Boldin cannot show his speech played a substantial role in the decision to terminate his employment. Raby discharged Boldin based on the conclusion Boldin caused damage to truck 112 by driving it abusively. Three mechanics concluded that driver abuse caused the damage to truck 112's transmission, and there is no dispute Boldin was the driver of the truck during this period. There is also no dispute that abuse of public property is an infraction warranting discharge.

Boldin argues Puckett's and Raby's comments to run Truck 112 until it quit show Raby's discharge of Boldin was pretextual. Further, Boldin takes issue with the district court's finding his retaliatory motivation evidence was "too equivocal and remote in time." The district court found "the most recent comment [by Raby to Lewter] . . . was still approximately a year prior to Boldin's discharge on October 30, 2001." Regardless of when the most recent comment occurred, we agree with the district court that the record is without any evidence that Raby orchestrated Boldin's termination by ordering Boldin to drive the truck until it quit and then firing Boldin for abusing the dump truck when the transmission went out shortly after Boldin complained the truck was not running correctly. There is no evidence supporting the evidence of a conspiracy against Boldin. The evidence also shows when Boldin was accused of abusing equipment on a prior occasion,

Raby believed Boldin at his word that he did not intentionally abuse equipment. This evidence goes against any alleged conspiracy against Boldin.

Boldin cannot show his protected speech played a substantial role in the decision to terminate his employment. Thus, because Raby did not violate Boldin's rights under the First Amendment, Raby is entitled to qualified immunity.

C. *Mt. Healthy*

The district court alternatively held even assuming there was some evidence Raby acted with a retaliatory motive, Boldin's claim would nevertheless fail under *Mt. Healthy*. In cases where a plaintiff has shown a public employer acted under both lawful and unlawful motives, the public employer cannot be liable if the evidence shows the public employer would have arrived at the same employment decision even in the absence of the allegedly protected conduct. *Mt. Healthy*, 97 S. Ct. at 576. We agree with the district court that there is undisputed evidence an impartial public employer would have discharged Boldin without regard to his acts of political expression. Boldin conceded the Limestone County Commission was impartial, and the Commission affirmed Raby's dismissal of Boldin based on the evidence his abusive driving damaged truck 112. *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1269–70 (11th Cir. 2001) (relying on the decision of an impartial ultimate decisionmaker to conclude the same decision would have been

10

made regardless of the actual decisionmaker's possible mixed motive). There is ample evidence Boldin's abusive driving caused the damage to Truck 112's transmission. There is no genuine issue of material fact that the public employer would have arrived at the same employment decision even in the absence of the allegedly protected conduct.

## III. CONCLUSION

We find no merit to Boldin's claim the district court applied collateral estoppel in his case. Additionally, the district court did not err in holding Boldin failed to raise a disputed issue of material fact regarding whether his speech was a substantial motivating factor in the termination of his employment, or in holding Boldin failed to raise a material issue of disputed fact regarding Raby's *Mt. Healthy* defense.

AFFIRMED.