NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1529
_____

NOLAN BIZZELL,
                    Appellant

v.

SUPERINTENDENT FRANKLIN J. TENNIS;
MAJOR MORRIS; CAPTAIN EDEN; C.O. PORTER
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3-09-cv-01353)
District Judge:  Honorable Richard P. Conaboy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 18, 2011

Before:  SCIRICA, GREENAWAY, JR., and VAN ANTWERPEN, Circuit Judges

(Filed: October 24, 2011)
_____

OPINION OF THE COURT
_____

PER CURIAM.

        Pro se plaintiff Nolan Bizzell appeals orders granting summary judgment in favor

of the defendants and denying a motion for reconsideration.  Having reviewed the record,

we are in full accord with the District Court and will affirm its judgment.

The basic facts of this lawsuit are not in dispute. During the time in controversy, Bizzell was incarcerated at the State Correctional Institution at Rockview, located in Bellefonte, Pennsylvania. In early 2007, he was paired with a new cellmate, Baron Powell, whose threatening remarks, erratic behavior, and racialist tendencies were cause for some alarm. On several occasions, Bizzell complained to prison staff members (including defendant Corrections Officer Porter) about his stormy relationship with Powell—for example, informing a Sergeant that "my celly is crazy"—and was instructed to "keep doing what you're doing" and "stay out of trouble." Bizzell, who was focused on "get[ting his] GED" and "conduct[ing] [him]self as a positive citizen," as well as on keeping his prison job, followed this advice, and for some time the tension between the two cellmates remained purely verbal.

On July 6, 2007, Bizzell discovered a four-inch-long bolt in his property box. Recognizing that it was contraband—and, worse, contraband that could "be sharpened . . . [into] a potential weapon"—Bizzell took the bolt to defendant Porter, informing him that he "found this in [his] property and [he] did not put it there." Bizzell further told Porter that he suspected Powell to be the culprit, as no other inmate could have placed the contraband in the cell. Bizzell suspected that Powell was "trying to set [him] up" (i.e. get him cited for misconduct); he also may have told Porter that he was concerned about personal safety.[1] Porter assured Bizzell that he would "take care of it."

---

[1] The facts as recounted by Bizzell in his deposition do not entirely correspond to what he included in his pleadings. In the complaint and in his response to the defendants' motion

The next day, Bizzell went to see defendant Major Morris. He again explained the situation regarding the bolt, implicating Powell and emphasizing that he did not wish to be sanctioned for this possible contraband. In response to Bizzell's worries over Porter's apparent lack of action, Morris told Bizzell to "stop being paranoid," advised him to see a psychiatrist to "get [his] medication upped," and walked away.

Undeterred, Bizzell continued to seek help, asking his work supervisor (Crispell, a non-party) to call defendant Captain Eden. Crispell did so, informed Eden of the

---

for summary judgment, he described telling various employees of the prison (some of whom are parties, some of whom are not) that he was concerned for his personal safety and that Powell "would attack him as he was being bullied by him." His deposition testimony (which, we should note, is not reproduced in full in the defendants' submissions, and does not contain much material associated with Bizzell's non-party discussions) was more equivocal, couched more in terms of the potential institutional and collateral harm connected to being caught with contraband:

> Q. Why, if he wanted to cause you harm, would he hide the bolt in your stuff as opposed to his stuff?
> A. Well, wouldn't you think it would be easier if the shakedown came in your cell and there's an object in there, who would get in trouble? Either way, whatever which way it goes; physically, mentally, emotionally or whatever which way it will go, I would be harmed because everything I did, my outside clearance, my education, my schoolwork. You have to have a certain clearance to do what I was doing where there's an outside clearance. I can work outside without supervision, so I don't have to have a staff member with me. So if they go and find that in my cell, there's no, oh, I don't know how that got there. That's a misconduct, you know that. And I believe I did the right thing as the policy say[s], when you find any contraband, because I'm responsible for what's [] in that cell, regardless if it's mine or not mine, I am to take it up to the officer immediately.

Dep. Tr. 42:22–43:19, ECF No. 19-2. Bizzell elsewhere admitted that his complaint contained some factual inaccuracies. See, e.g., Dep. Tr. 62:10–14 (clarifying that his "several days" of hospitalization was actually just "one day").

3

situation, and told Bizzell of Eden's advice: "not to worry about it."

Later that day, after speaking to several other individuals—and apparently issuing an agitated plea to non-party Nurse Paula, in which he described his fears of an impending attack—Bizzell was assaulted in his cell by Powell. Bizzell sustained serious injuries from the beating and was briefly hospitalized. During his convalescence, he met with defendant Superintendent Tennis, with whom he had not previously spoken.

After exhausting his administrative grievances,[2] and following his release from prison and his relocation to Florida, Bizzell initiated this 42 U.S.C. § 1983 suit against defendants Tennis, Morris, Eden, and Porter, alleging that they violated his rights under the Eighth Amendment to the United States Constitution by displaying "deliberat[e] indifferen[ce] to his personal safety by ignoring repeated complaints and requests for assistance for protection from [Powell]." Compl. ¶ 1, ECF No. 1. The defendants moved for summary judgment. The presiding Magistrate Judge issued a Report and Recommendation (R&R) in favor of summary judgment; Bizzell filed objections, but did not do so in a timely fashion. Accordingly, the District Court performed "clear error" review of the R&R and granted summary judgment in favor of the defendants. Bizzell moved for reconsideration of this outcome, after the denial of which he filed a timely notice of appeal.

"We exercise plenary review of the district court's grant of defendants' motion for

---

[2] See 42 U.S.C. § 1997e(a).

4

summary judgment." Fontroy v. Owens, 150 F.3d 239, 242 (3d Cir. 1998).[3] In so doing,

we apply "the same standard that the lower court should have applied." Farrell v.

Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000); see also Fed. R. Civ. P. 56(a)

(summary judgment is appropriate if "there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law").[4] In determining whether

summary judgment is appropriate, we must "view all evidence and draw all inferences in

the light most favorable to the non-moving party." Startzell v. City of Phila., 533 F.3d

183, 192 (3d Cir. 2008). "[T]he non-moving party must rebut the [summary-judgment]

motion with facts in the record and cannot rest solely on assertions made in the pleadings

[or in] legal memoranda . . . ." Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201

[3] Our selection of a standard of review is complicated somewhat by Bizzell's untimely filing of objections to the R&R; indeed, he specifically asks us to deem his objections timely and remand the case to the District Court for de novo review. His argument to this end, which is based on the "confusing" nature of the local and Federal rules, is unavailing. See Ogden v. San Juan Cnty., 32 F.3d 452, 455 (10th Cir. 1994) (observing that pro se status is no excuse for failure to follow Federal Rules); see also McNeil v. United States, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."). However, despite "denying" Bizzell's motion for reconsideration, the District Court functionally analyzed his objections de novo; therefore, we need not determine what effect his failure to timely object may have had on our standard of review. See Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011); Henderson v. Carlson, 812 F.2d 874, 878 n.4 (3d Cir. 1987). As the sole focus of the motion for reconsideration was in fact achieved in all but name, we will not discuss it further herein.

[4] The R&R issued on November 29, 2010, and the District Court entered its order on December 20, 2010. In the interim, the 2010 revisions to the Federal Rules went into effect. We cite above to the December 2010 revision, but the differences between the old and new Rule 56 do not affect the substantive summary-judgment standard. See Fed. R. Civ. P. 56 advisory committee's 2010 note.

(3d Cir. 2006) (internal citations and quotations omitted).

We agree that the defendants were entitled to summary judgment. The Eighth Amendment's prohibition on "cruel and unusual punishments" has "been interpreted to impose a duty upon prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners." Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997) (citations and quotations omitted). But "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an *excessive risk* to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994) (emphasis added); see also Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010). "Consequently, to survive summary judgment on an Eighth Amendment claim asserted under 42 U.S.C. § 1983, a plaintiff is required to produce sufficient evidence of (1) a *substantial* risk of *serious* harm; (2) the defendants' *deliberate indifference* to that risk; and (3) causation." Hamilton, 117 F.3d at 746 (emphasis added). Here, there is no indication that the defendants were aware of a serious risk posed to Bizzell by Powell. The two had not previously fought; Bizzell's pre-July complaints focused on Powell's instability and not his potential for (and threats of) violence. Even if we were to follow the July events as Bizzell describes them in his complaint and memorandum of law, his expressions of fear upon finding the bolt were mixed with concerns over disciplinary sanctions for contraband. The bolt itself, as Bizzell admits, was not fashioned into a weapon, and *had been confiscated* by the defendants before the assault. Powell's disciplinary history,

6

meanwhile, suggests a troublemaker with violent tendencies—hardly an ideal cellmate for Bizzell[5]—but (as the District Court explained) his citations for fighting were from September 2005, and therefore did not suggest an immediate risk of violence. See Brennan, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (in case with similar fact pattern, "before Defendants' awareness arises to a sufficient level of culpability, there must be much more than mere awareness of [a cellmate's] generally problematic nature"); cf. Verdecia v. Adams, 327 F.3d 1171, 1175–76 (10th Cir. 2003) (distinguishing Eighth Amendment deliberate indifference from situations in which a defendant is "negligent in assessing [a] risk"). Finally, Bizzell has shown no personal involvement by defendant Tennis in any aspect of a potential constitutional violation, and § 1983 liability cannot be premised solely on respondeat superior. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).

In sum, while we agree with the defendants that the assault was tragic, we also believe that they did not demonstrate the deliberate indifference to a serious risk of harm required for liability under the Eighth Amendment. We will therefore affirm the judgment of the District Court.

---

[5] Of course, Bizzell had no constitutional right to a cellmate of his choosing. See Murray v. Bledsoe, ___ F.3d ___, No. 10-4397, 2011 WL 2279428, at *1 (3d Cir. June 10, 2011).