[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-16364
Non-Argument Calendar
_____

D.C. Docket No. 6:11-cv-00045-BAE-JEG

CURTIS SPIRES,
a.k.a. Jimmie Canupp, Jr.,

                                                        Plaintiff-Appellant,

versus

JOHN PAUL,
Deputy Warden of Care and Treatment,
Georgia State Prison,
OFFICER MYER,
Individually and in his official capacity,
KIM THOMAS,
LARRY BREWTON,
Unit Manager, Georgia State Prison,
OFFICER TAMMIE THOMAS,
Emergency Response Team,
Georgia State Prison, et al.,

                                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(September 16, 2014)

Before HULL, MARCUS, and FAY, Circuit Judges.

PER CURIAM:

Curtis Spires, an inmate at Georgia State Prison ("GSP"), appeals the district judge's order granting two GSP officials' motions to dismiss and the order granting summary judgment to two other officials in an 42 U.S.C. § 1983 action alleging Eighth Amendment violations. We affirm summary judgment in favor of two officials, reverse the dismissal of the claims against the other two, and remand for further proceedings.

## I. BACKGROUND

This case involves two distinct sets of claims. First is Spires's claim that Unit Manager Larry Brewton and Security Chief Doug Williams violated the Eighth Amendment by allowing an attack by his former cellmate, Deondrea Lee. Second, Spires claims Officer Tammie Thomas and Deputy Warden of Care and Treatment John Paul violated the Eighth Amendment by placing him in a cell without potable water, which forced him to drink from a toilet. The district judge granted summary judgment to Williams and Brewton and dismissed the claims

2

against Thomas and Paul.  We first address the relevant facts underlying the attack

and then move to deprivation of potable water.

A.    Attack by Deondrea Lee

On August 9, 2010, Deondrea Lee was assigned to Spires's cell.  Their

pairing was not peaceful.  Lee started by threatening to commit violence against

Spires if he ate pork.[1]  Spires complained to an unknown corrections officer,

"Hall" about Lee.  In the presence of Officer Hall, Lee threatened to rape and kill

Spires.  He submitted several "witness statement" forms to GSP officials,[2]

complaining of the danger to him from Lee.  On August 12, Lee punched Spires in

the face and, later that night, digitally raped Spires.  Spires never reported the

attacks.  An unknown number of days after the August 12 incident, Spires

complained to Brewton that "[he] was having problems with [Lee] and . . . wanted

to be moved."  ROA at 662.  On August 17, Spires submitted a new witness

statement form, this time to Brewton.  In the form, Spires stated:  "I am in fear for

my life from Deondre[a] Lee my roommate . . . . I have been threatened w[ith]

bodily harm . . . but no one is helping me."  ROA at 713.  Brewton forwarded the

witness statement to GSP's classification committee, which handles placement of

prisoners.  One day later, Spires was removed from the cell.

---

[1] Lee, a Muslim, objected to Spires's consumption of pork during Ramadan.

[2] A "witness statement" is a form used by inmates seeking protection.

On October 18, two months later, Spires was assigned by the classification committee to be housed in Building E-4.  Lee previously had been assigned to the same building.  The same day that Spires arrived in Building E-4, Lee assaulted him.  He suffered trauma to his head and a broken finger.  Afterwards, Williams and Brewton spoke with Spires about the attack.

B.    Spires's Confinement Without Potable Water[3]

After Spires was removed from the cell with Lee, but before the October 18 assault, Spires was caught with marijuana.  As punishment, he was to spend 21 days in an isolation cell.  On September 28, while en route to the isolation cell, Officer Thomas asked Spires who had given him the marijuana.  Spires refused to answer, and Thomas said: "Enjoy your stay in isolation with no water to drink." ROA at 109.  Over the next two days, Spires informed several officers that the sink in his cell was not working; consequently, there was no potable water in his cell. Because of Spires's extreme thirst, he had to drink water from the toilet.  On October 1, after begging several GSP officers for water, one gave him four cups of water.  The next day, he again had to drink water from the toilet because of extreme thirst.

On October 3, Spires wrote letters to Deputy Warden Paul and two other officials and informed them of his "ordeal of no water in cell from which to drink

---

[3] We assume these facts, which are alleged in the complaint, are true for the purpose of reviewing a dismissal.  *See Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012).

4

and . . . drinking from [a] toilet was a[]lot to ask of someone." ROA at 111. Spires asked Paul to look into the matter. Later that day, Spires experienced cramps, vomiting, diarrhea, and blood in his stool. He continued to ask various GSP officers for drinking water over the next two days.

On October 6, Spires received a response from Paul stating:

> You have no water in your cell in which to drink from. Should have thought of the consequences before you got caught with dope! You made yet another bad decision that cost you the privile[]ge of walking around. If your sink fountain does not work inform cell block officer so that they can do a work order.

ROA at 113. Spires continued to be sick, exhibited blood in his stool, and was unable to eat for the several days. Potable water was provided to Spires's cell seven days later.

## C.    Proceedings in District Court

Spires filed suit and asserted the defendants violated his Eighth Amendment rights as follows: (1) Officer Thomas, by placing Spires in a cell without potable water; (2) Deputy Warden Paul, by failing to remedy the lack of potable water in his isolation cell; (3) Unit Manager Brewton, by ignoring Spires's complaints about Lee, which resulted in Lee's attack on Spires; and (4) Brewton and Security Chief Williams, by allowing Spires to be moved into the same building as Lee, which likewise resulted in Lee's attack on Spires.

The defendants moved to dismiss all claims. The district judge dismissed Spires's claims against Thomas and Paul for failure to state a claim, but denied the motion to dismiss as to Spires's claims against Brewton and Williams. After discovery, Brewton and Williams moved for summary judgment. In addition to documents and a deposition describing the events discussed in Part I.A, Spires provided additional documents regarding Lee's past acts. Spires submitted Lee's disciplinary history from 2003 to 2010, which attributed 48 separate incidents to him, though none were violent.

Spires also provided an affidavit from another inmate, Calvin Hodge. Hodge attested a group of inmates that included Lee had beaten him on August 18, 2010, during a dispute about stolen items. Hodge further attested he identified his attackers, including Lee, to the "Dep[uty] Warden of Security." ROA at 1132.

Finally, Spires provided an undated witness statement submitted by Lee. In the statement, Lee reported he was getting "frustrated" with his cellmate, and, absent an intervention, a physical conflict was likely to occur. ROA at 1221. The district judge granted summary judgment to Brewton and Williams and concluded that neither had sufficient notice of serious risk to Spires from Lee. This appeal followed.

6

## II.  DISCUSSION

We address first the summary judgment ruling, then move to the dismissal of the claims against Thomas and Paul.

A.    Summary Judgment in Favor of Williams and Brewton

On appeal, Spires challenges the grant of summary judgment in favor of Unit Manager Brewton and Security Chief Williams as to Lee's October 18, 2010, attack on Spires.  Spires argues the evidence was sufficient to show both defendants knew of the serious risk Lee posed to Spires on that date and did nothing to protect him.

We review a district judge's grant of summary judgment de novo.  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009).  We consider the facts and draw all reasonable inferences in the light most favorable to the non-moving party.  *Id.*  Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  We may affirm the judgment of the district court on any grounds supported by the record.  *Koziara v. City of Casselberry*, 392 F.3d 1302, 1306 n.2 (11th Cir. 2004).

1.    Williams

To survive summary judgment on a § 1983 Eighth Amendment claim, a plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm,

(2) defendants' deliberate indifference to that risk, and (3) causation. *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). To establish a substantial risk of serious harm, the condition complained of must pose an unreasonable risk of serious damage to a prisoner's future health or safety. *Chandler v. Crosby*, 379 F.3d 1278, 1298 (11th Cir. 2004). To establish deliberate indifference, one must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence. *Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010). An official's failure to alleviate a significant risk he should have perceived, but did not, does not violate the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 838, 114 S. Ct. 1970, 1979 (1994); *see also Carter*, 352 F.3d at 1349 (explaining that deliberate indifference requires "much more than mere awareness" of the "generally problematic nature" of an issue).

Regarding Spires's claim against Williams, there is insufficient evidence to conclude Williams had actual knowledge of any substantial risk to Spires posed by Lee. Spires claims, and we accept, that he submitted four witness statement forms to prison officials describing threats by Lee. There is no evidence, however, that Williams was one of the officials that received these statements. Lee's disciplinary history, while extensive, had no violent incidents before the attack. The affidavit from the other inmate, Hodge, does describe an attack by Lee in August 2010, but Hodges attested he only told the Deputy Warden of Security, not Williams, who

8

was Security Chief.[4]  And the undated witness statement submitted by Lee threatening violence against his cellmate, presumably Spires, does not show Williams had personal knowledge of the threat posed by Lee.

Nor did Spires establish that Williams was responsible for placing him into Building E-4 with Lee.[5]  The only connection Williams had to the October 18 attack was that he interviewed Spires afterwards.  Although Williams served as Security Chief for GSP, his position alone, without more, is insufficient to imply actual knowledge and establish deliberate indifference.  *See Farmer*, 511 U.S. at 838, 842, 114 S. Ct. at 1979, 1981; *Thomas*, 614 F.3d at 1312; *Chandler*, 379 F.3d at 1289-90.

2.    Brewton

Regarding Brewton, there is evidence he had knowledge of the risk posed by Lee.  Spires notified Brewton that he was having problems with Lee.  He also submitted to Brewton the August 17 witness statement, which stated Spires feared for his life because of Lee's threats.  Brewton was responsible for security in Building E-4, where Spires was attacked by Lee.

---

[4] It appears Williams has since been promoted to Deputy Warden of Security, but that was not his position at the time of the attack.

[5] Spires did submit a document containing Williams's job description.  One of the duties of his position is serving, when appropriate, on the classification committee, which is responsible for placement of inmates.  Williams, however, explained he was not on the classification committee at the time Spires was placed in Building E-4, and Spires did not refute it.

9

But Brewton, like Williams, had nothing to do with Spires's placement into Building E-4. There is no evidence he knew Spires was being assigned to Building E-4 on the day of the attack. Additionally, Spires was not assaulted until two months after the threat.

Although the district judge did not rule on qualified immunity, Brewton raised it in the district court and also raised it on appeal. Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities. *Whittier v. Kobayashi*, 581 F.3d 1304, 1307 (11th Cir. 2009). It is not enough to establish that a defendant may have violated a constitutional right; the plaintiff also must show the right was clearly established such that a reasonable person would have known the conduct was unlawful. *Id.* at 1308.

Spires notified Brewton that he believed Lee was a threat to him. The belief later turned out to be accurate, but there is simply nothing in the record that could have corroborated Lee's beliefs for Brewton. We have never held that a prison official, faced with a bare allegation of a threat from an inmate, is subsequently liable for any attack occurring after the threat. To the contrary, in *Carter* we held that "there must be much more than mere awareness of [an inmate's] generally problematic nature." *Carter*, 352 F.3d at 1349. Our precedent simply does not suggest, much less "clearly establish," a prison official's knowledge of a bare

threat, without more, creates individual liability for a prison attack.  This is especially true where the attack occurred months after the threat.  Accordingly, we conclude Brewton is entitled to qualified immunity.

B.   Dismissal of Claims against Officer Thomas and Deputy Warden Paul

Spires argues he sufficiently alleged constitutional violations against Officer Thomas and Deputy Warden Paul, for the lack of potable water in his cell. Thomas and Paul respond that Spires's allegations required speculation to state a cause of action.  Thomas and Paul alternatively argue they were entitled to qualified immunity.

We review de novo a dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). We accept the allegations in the complaint as true and and construe them in the light most favorable to the plaintiff.  *Id.*  To survive a motion to dismiss, a complaint must contain sufficient factual allegations, if accepted as true, to state a claim to relief that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted).  Pro se filings are to be construed liberally, and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (internal quotation marks omitted).

11

To state an Eighth Amendment claim under § 1983, a prisoner must allege an extreme condition that poses an unreasonable risk of serious damage to the prisoner's future health or safety, and that the defendants acted with deliberate indifference to that risk. *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010); *see also Chandler*, 379 F.3d at 1298 (highlighting that "*extreme deprivations*" are required to make out an Eighth Amendment conditions-of-confinement claim (internal quotation marks omitted)). A prison official's act or omission that results in the denial of "the minimal civilized measure of life's necessities" is sufficiently serious to state an Eighth Amendment claim. *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977 (internal quotation marks omitted); *see also LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993) (explaining that an Eighth Amendment violation may be found where a prison official disregards "an inmate's basic needs").

In a conditions-of-confinement claim, deliberate indifference does not require acts or omissions to have been committed for the purpose of causing harm or with knowledge that harm will result. *Farmer*, 511 U.S. at 835-36, 114 S. Ct. at 1978. It is enough that the official acted or failed to act despite his or her knowledge of a substantial risk of serious harm. *Id.* at 842, 114 S. Ct. at 1981. Prison officials, who actually knew of a substantial risk to an inmate's health or safety, may escape liability if they responded reasonably to the risk, even if the

12

harm ultimately was not averted.  *Id.* at 844, 114 S. Ct. at 1982-83; *cf. id.* at 847, 114 S. Ct. at 1984 (explaining that an official may be liable under the Eighth Amendment if he or she fails to "take reasonable measures to abate" a substantial risk of serious harm).  The plaintiff must also show the "official's acts or omissions were the cause—not merely a contributing factor—of the constitutionally infirm condition."  *LaMarca*, 995 F.2d at 1538; *see also id.* at 1539 (explaining that causation may be found where an official was in a position to have taken steps that could have averted an unconstitutional condition, but failed to do so).

Read liberally, Spires's pro se pleadings alleged sufficient facts to state an unlawful condition of confinement under the Eighth Amendment.  The deprivation of potable water for several days is a denial of a "basic need[]" and "the minimal civilized measure of life's necessities."  *See Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977; *LaMarca*, 995 F.2d at 1535; *see also Chandler v. Baird*, 926 F.2d 1057, 1065-66 (11th Cir. 1991) (explaining that the right not to be confined in conditions lacking basic sanitation is well established).  Spires sufficiently alleged an unreasonable risk of serious harm by asserting he was housed in a cell without potable water for two weeks.  *See Richardson*, 598 F.3d at 737.

Spires also alleged that, while escorting him to the isolation cell, Thomas stated: "Enjoy your stay in isolation with no water to drink."  ROA at 109.  This allegation was sufficient to show Thomas knew the cell to which she was taking

13

Spires lacked potable water.  Read liberally, the combined effect of several allegations in Spires's pleadings reasonably supports an inference that Thomas knew Spires would be spending an unreasonable amount of time without potable water.  First, Spires had received 21 days in an isolation cell after marijuana was found in his locker.  A factfinder reasonably could infer that drug-possession infractions typically resulted in at least several days in an isolation cell.  Second, Spires alleged that, while being escorted to the isolation cell, Thomas asked him to divulge the source of his marijuana.  Because Thomas knew the reason behind Spires's punishment, a factfinder also reasonably could infer she knew Spires was to spend 21 days in the cell, or, at the very least, she "strongly suspected," there was a risk Spires would spend multiple days in the cell without drinking water. *See Farmer*, 511 U.S. at 843 n.8, 114 S. Ct. at 1981 n.8.

Finally, Spires alleged he spent several days in the isolation cell without water to drink, during which he suffered extreme thirst and resorted to drinking water out of the toilet.  This caused him to suffer cramps, vomiting, diarrhea, and blood in his stool.  These allegations support a reasonable inference that Thomas did not tell anyone Spires was housed in an isolation cell without potable water. *See id.* at 847, 114 S. Ct. at 1984 (explaining that liability may lie where an official fails to "take reasonable measures to abate" a substantial risk of serious harm). Thus, Spires's allegations were sufficient to state a plausible claim that Thomas

14

acted with deliberate indifference to an unreasonable risk of serious harm to Spires's health, which caused Spires to suffer serious health issues. *See Thomas*, 614 F.3d at 1312; *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 999 (11th Cir. 1995); *LaMarca*, 995 F.2d at 1539 (explaining that causation may be found where an official was in a position to have taken steps that could have averted an unconstitutional condition, but failed to do so).

With respect to Deputy Warden Paul, Spires alleged he informed Paul on October 3, five days after he was placed in his isolation cell, of his "ordeal" of being kept in a cell with no potable water, which caused him to drink water from the toilet. ROA at 111. This allegation could have been better drafted, but a reasonable inference may be drawn that the "ordeal" to which Spires referred included his unsuccessful attempts to get GSP officers to provide potable water in his cell. Spires's allegation he informed Paul that he had resorted to drinking toilet water further supports an inference he had been unsuccessful in obtaining potable water. The same allegation reasonably supports an inference Paul knew Spires had been unsuccessful for several days in his attempts to obtain relief from officers with whom he had contact, or, at the very least, that Paul strongly suspected this was the case. *See Farmer*, 511 U.S. at 842-43 & n.8, 114 S. Ct. at 1981 & n.8. Thus, Spires sufficiently alleged Paul knew of, or strongly suspected the existence

of, an unreasonable risk of serious harm to Spires's health.  *See id.*; *Richardson*, 598 F.3d at 737.

In view of that knowledge, Paul's response—that Spires should again bring the problem to cell block officers—sufficiently states a claim that Paul acted with deliberate indifference to an unreasonable risk of serious harm to Spires's health, which resulted in Spires suffering extreme thirst and several serious health issues. *See Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Thomas*, 614 F.3d at 1312; *Swint*, 51 F.3d at 999; *LaMarca*, 995 F.2d at 1539.

Moreover, Paul's response referred to the lack of potable water as one of the "consequences" of getting caught with marijuana.  ROA at 113.  When viewed in context with Spires's additional allegations, this supports a plausible inference that Paul treated the lack of water as punishment for possessing marijuana and, consequently, failed to take measures to abate it in a reasonably timely manner. *See Farmer*, 511 U.S. at 847, 114 S. Ct. at 1984.  It further supports a showing that the prolonged deprivation of water was the result of more than gross negligence. *See Thomas*, 614 F.3d at 1312.  Finally, the defendants' passing suggestion on appeal, that Paul had no reason to believe Spires did not have other sources of hydration, ignores Spires's allegation that he informed Paul he had to drink toilet water to quench his thirst.

For all of the above reasons, Officer Thomas and Deputy Warden Paul are not entitled to qualified immunity on the face of Spires's complaint. Assuming the truth of Spires's allegations, it would be abundantly clear to a reasonable officer that housing an inmate in a cell without potable water for at least several days would violate the inmate's constitutional rights. *See Whittier*, 581 F.3d at 1307-08; *see also Baird*, 926 F.2d at 1065-66 (explaining that the right of a prisoner not to be confined in conditions lacking basic sanitation is well established). Therefore, we reverse the dismissal of Spires's claims against Thomas and Paul.

### III.  CONCLUSION

We reverse the dismissal of Spires's claims against Officer Thomas and Deputy Warden Paul, affirm the grant of summary judgment to Unit Manager Brewton and Security Chief Williams, and remand for further proceedings.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**

17