[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11073
Non-Argument Calendar
_____

D.C. Docket No. 6:11-cv-00045-JRH-RSB

JIMMIE CANUPP, JR.
a.k.a. Curtis Spires,

Plaintiff-Appellant,

versus

JOHN PAUL,
Deputy Warden of Care and Treatment,
Georgia State Prison,
OFFICER MYER,
Individually and in his official capacity,
KIM THOMAS,
LARRY BREWTON,
Unit Manager, Georgia State Prison,
OFFICER TAMMIE THOMAS,
Emergency Response Team, Georgia State Prison, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(November 8, 2017)

Before HULL, MARTIN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Curtis Spires,[1] a Georgia prisoner proceeding pro se, appeals the district court's grant of summary judgment in favor of Deputy Warden John Paul and Officer Tammie Thomas (the "defendants") in this action under 42 U.S.C. § 1983 alleging violations of Spires's Eighth Amendment rights.  After careful review, we reverse.

## I.

## A.

On September 28, 2010, after Spires was found in possession of marijuana, prison officials imposed a punishment of 21 days in an isolation cell.  Officer Thomas took Spires to the isolation cell.  When they reached the cell, Spires told her the sink in the cell was not working.  Spires claims that Officer Thomas responded: "Enjoy your stay in isolation with no water to drink."  Officer Thomas says she informed the building's control officer of the broken sink that same day so that a work order could be submitted.

During his first three days in isolation, Spires told four different officers that the cell's sink didn't work and that he had to drink from the cell toilet due to severe

---

[1] Spires is currently incarcerated in South Carolina and now goes by his legal name, Jimmie Canupp.  At the time he brought this suit, he used the name Curtis Spires.  Because the record references him by the name Spires, we will as well.

2

thirst.  On October 1st, Spires's fourth day in the isolation cell, two patrolling officers ignored his pleas for cups of water.  Eventually, a third patrolling officer, Officer McKinley, gave him four cups of water.  Officer McKinley had to tell Spires to "[s]low down, drink slow," and then remarked, "My god this is not right."  On October 2nd, Spires was again so thirsty that he drank from his toilet.  On October 3rd, Spires wrote a sick-call for cramps, vomiting, diarrhea, and blood in his stool.  The medical unit diagnosed Spires with dysentery and provided treatment.  On October 4th, Spires wrote a letter to Deputy Warden Paul telling him that because he had no "safe drinking water" in his cell for seven days, he had been forced to drink from his toilet.  The letter asked Deputy Warden Paul to look into the matter.

On October 5th, Spires was taken to the Correctional Emergency Response Team ("CERT") office, where he saw Officer Thomas.  He told her his sink still wasn't working and that he had been drinking from his cell toilet as a result.  Spires says Officer Thomas acknowledged his presence but did not respond to his complaints.  Instead she just stared at him.  Officer Thomas says she has no recollection of this encounter.

On that same day, Spires spoke with his general population counselor, Mr. G. Strickland, about his broken sink and filed a grievance with him.  Mr. Strickland submitted a work order that day (October 5th).

3

Sometime before October 6th, Spires spoke with Deputy Warden Paul during an inmate inspection, and he told Paul he still didn't have access to any water in his cell.[2]  Then, on October 6th, Deputy Warden Paul replied to Spires's October 4th letter.  He wrote:

> You have no water in your cell in which to drink from, should have thought of the consequences before you got caught with dope!  You made yet another bad decision that cost you the privilege of walking around.  If your sink fountain does not work, inform cell block officer so that they can do a work order.[3]

Deputy Warden Paul says he also contacted the unit secretary about Spires's broken sink, and she told him about the work order that had been submitted for its repair.

On October 7th, Spires again went to the medical unit to receive treatment for dysentery.  Spires told the physician's assistant he "had no water in [his] lockdown cell to drink."  On October 13th, the sink in Spires's cell was fixed.

Spires went a total of fourteen days without running water in his isolation cell.  While Spires's sink was broken, he had very limited access to other sources of water.  He usually received one eight-ounce cup of tea with each meal, but sometimes the tea was "left out of meals due to mistakes . . . by officers."  On six

---

[2] It is not clear from the record exactly when this conversation took place, only that it happened before October 6th.

[3] Deputy Warden Paul's note is handwritten and not entirely legible.   For purposes of summary judgment, the defendants stipulated to the content of the note.

of the fourteen days, Spires received three meals per day, but on the other eight days he received only two meals. Spires also received seven cups of water from patrolling officers over the course of the fourteen days, and he was offered ice every day. Throughout the two-week period, Spires drank water from his toilet about a dozen times in order to stay hydrated.[4]

## B.

In May 2011, Spires filed this § 1983 action against the defendants. Spires alleged that the defendants violated his rights under the Eighth Amendment by depriving him of adequate drinking water and forcing him to drink from the toilet. The defendants moved to dismiss the suit for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and, alternatively, because they were entitled to qualified immunity. The district court granted the defendants' motion and dismissed Spires's claims. Spires then appealed to this Court and won. See Spires v. Paul, 581 F. App'x 786, 794 (11th Cir. 2014) (per curiam) (unpublished). This Court held, contrary to the district court, that Spires's allegations were sufficient to

---

[4] The facts recounted herein represent the facts and reasonable inferences in the light most favorable to Spires. See Rioux v. City of Atlanta, 520 F.3d 1269, 1274 (11th Cir. 2008). We recognize that the defendants' version of events—and what they knew about Spires's access to water—differs from Spires's. For example, defendants state that they were not concerned about the lack of running water in the cell, because: (1) inmates are served beverages with meals two or three times per day; (2) inmates are served ice multiple times daily, with some inmates eating the ice and many allowing it to melt to have cold water to drink; and (3) inmates can request water from officers patrolling near the cells, and officers will provide water from the water fountain when requested. Spires, however, avers that beverages were not always served with each meal, that ice was not available to him multiple times daily, and that some officers refused his requests for a drink of water. These factual disputes are matters for the jury to decide.

5

state a plausible claim that the defendants "acted with deliberate indifference to an unreasonable risk of serious harm to Spires's health, which caused Spires to suffer serious health issues." Id. at 793. We concluded that "it would be abundantly clear to a reasonable officer that housing an inmate in a cell without potable water for at least several days would violate the inmate's constitutional rights." Id. at 794.[5]

On remand, the defendants filed an answer to Spires's complaint. After the parties completed discovery, the defendants moved for summary judgment. They argued that Spires failed to raise a genuine dispute of material fact as to his Eighth Amendment claims and, also, that they were entitled to qualified immunity. The district court granted summary judgment on the basis that Spires "fail[ed] to establish a genuine dispute as to any fact material to his Eighth Amendment claims."[6] Although the district court did not rule on the issue of qualified immunity, it said in a footnote that the defendants "likely" would be entitled to such immunity. Spires timely filed this appeal.

---

[5] This Court reversed the dismissal of Spires's claims against Officer Thomas and Deputy Warden Paul, but affirmed the grant of summary judgment for two additional defendants who are no longer parties to this case. Id.

[6] The defendants' motion for summary judgment was referred to a magistrate judge for a Report and Recommendation ("R&R"), and the magistrate judge recommended granting summary judgment. Because the district court adopted the magistrate judge's R&R, we will refer to the R&R as the order of the district court.

6

## II.

We review de novo the district court's grant or denial of summary judgment, viewing the facts, and drawing all reasonable inferences, in the light most favorable to the nonmoving party.  Rioux, 520 F.3d at 1274.  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).  "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant.  For factual issues to be considered genuine, they must have a real basis in the record."  Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993) (citation omitted).

## III.

## A.

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31, 113 S. Ct. 2475, 2480 (1993).  Eighth Amendment challenges to conditions of confinement are governed by a two-part analysis: an objective inquiry and subjective one.  Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994).  "First, under the objective component, a prisoner must prove that the condition he complains of is sufficiently serious to

violate the Eighth Amendment." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotation omitted). The prisoner must show that an "extreme" condition "pose[d] an unreasonable risk of serious damage to his future health or safety." Id. (quotations omitted). "Only a deprivation which denies 'the minimal civilized measure of life's necessities' is grave enough to violate the Eighth Amendment." Jordan v. Doe, 38 F.3d 1559, 1564 (11th Cir. 1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399 (1981)). The second step of the Eighth Amendment analysis is "the subjective component." Id. at 1564. Under this component, the prisoner must show that the defendant official acted with "deliberate indifference" toward the condition at issue. Chandler, 379 F.3d at 1289. Deliberate indifference is established by showing: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). Thus, putting the objective and subjective elements together, we have said: "A prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." Marsh v. Butler Cty., 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).

## B.

We consider first whether Spires's evidence satisfies the objective element of an Eighth Amendment claim. We conclude, contrary to the district court, that

Spires has shown he was confined in conditions that were severe enough to satisfy the objective prong.

There can be no doubt that adequate hydration is among the basic life necessities that prisoners are guaranteed under the Eighth Amendment. See Helling, 509 U.S. at 33, 113 S. Ct. at 2480 (noting that "a prison inmate [] could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery"). No one contests that Spires was confined to an isolation cell for two weeks with no running water and that, as a result, he drank from his toilet a dozen times. Although the defendants say Spires had adequate alternative sources of hydration, Spires's evidence shows otherwise. Viewing the facts and drawing all reasonable inferences in the light most favorable to Spires, see Rioux, 520 F.3d at 1274, the evidence shows that he received one or two eight-ounce cups of tea per day plus servings of ice, and seven additional cups of water throughout the entire two-week period. A reasonable jury could find that such a meager amount of water over a fourteen-day period was an "extreme" deprivation that "pose[d] an unreasonable risk of serious damage to [Spires's] future health or safety." Chandler, 379 F.3d at 1289 (quotations omitted); see also id. at 1295 ("[A] condition which might not ordinarily violate the Eighth Amendment may nonetheless do so if it persists over an extended period of time." (quotation omitted)). Spires was given so little water that he had to resort to drinking out of

9

the same toilet in which he was defecating and vomiting.  Certainly, a jury could infer from this act of desperation that the amount of drinking water the prison provided fell below "the minimal civilized measure of life's necessities."  Jordan, 38 F.3d at 1564 (quotation omitted).

Also, Spires's having to drink water from his toilet exposed him to his own excrement on a near-daily basis for two weeks.  "[T]he health risks of prolonged exposure to human excrement are obvious."  Brooks v. Warden, 800 F.3d 1295, 1305 (11th Cir. 2015).  This Court's precedent establishes that an inmate's prolonged exposure to human waste "sufficiently allege[s] a substantial risk of serious harm."  Id.  By depriving Spires of adequate drinking water the prison exposed him to exactly this type of risk.  Thus, we have little trouble concluding that Spires has satisfied the objective element of an Eighth Amendment violation.

### C.

Spires having satisfied the objective prong of the Eighth Amendment standard, we turn next to the subjective prong.  As mentioned, Spires must show that the defendants acted with deliberate indifference.  Chandler, 379 F.3d at 1289.  To do this, he must establish for each officer that they had subjective knowledge of the risk of serious harm and that they disregarded that risk by conduct that was more than merely negligent.  McElligott, 182 F.3d at 1255.   Applying this standard, we conclude that a reasonable jury could find both defendants were

10

deliberately indifferent.  We address the issue of deliberate indifference separately for each defendant.  See Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008) ("Each individual [d]efendant must be judged separately and on the basis of what that person knows.").

1.

As for Officer Thomas, she concedes that she learned of the lack of running water in Spires's cell as soon as she brought him there on September 28, 2010. Because the prison provided scarce hydration other than the running water in an inmate's sink, the evidence suggests Officer Thomas was aware that Spires was at risk of being confined without a basic necessity from the moment she left him at his cell.  Indeed, Officer Thomas indicated in her declaration that "[i]ssues involving access to water are taken particularly seriously," which suggests she knew the harm that could come from leaving an inmate without a working sink. The evidence thus shows she had subjective knowledge that the broken sink created a risk of serious harm to Spires.  See McElligott, 182 F.3d at 1255.

The evidence also shows Officer Thomas disregarded that risk by conduct that was not simply negligent.  See id.  Officer Thomas says she responded reasonably to the broken sink because on the same day she learned the sink wasn't working she informed the building's control officer so that a work order could be submitted.  But the evidence doesn't back this up.  The only work order in the

record is the one Mr. Strickland filed on October 5th after Spires told him about the broken sink. Further, it is undisputed that the sink was not fixed until October 13th—two weeks after Officer Thomas says she initiated a work order. Officer Thomas says repairs involving access to water were "generally [] made on the same day a work order is put in or . . . the next day." In light of this, a jury could reasonably discredit her claim that she initiated a work order for the broken sink on September 28th.

Even if Officer Thomas did take some action on September 28th to get the sink repaired, Spires testified that seven days later (on October 5th) he told her the sink was still broken and he had been drinking from his toilet, but she ignored him and took no action. After this conversation, Spires remained without running water for another entire week. A reasonable jury could conclude from this fact that even though Officer Thomas knew Spires had already gone a week without adequate hydration—and with repeated digestive exposure to excrement—she nonetheless took no action to alleviate the deprivation of drinking water. This "demonstrate[s] that, with knowledge of the infirm conditions, [Officer Thomas] knowingly or recklessly declined to take actions that would have improved the conditions." LaMarca v. Turner, 995 F.2d 1526, 1537 (11th Cir. 1993).

Indeed, the evidence suggests that Officer Thomas acted with a mental state even more culpable than recklessness. According to Spires, when Officer Thomas

12

learned his sink was broken, she told him: "Enjoy your stay in isolation with no water to drink." This comment indicates Officer Thomas was not simply reckless in disregarding the risk of harm Spires faced without adequate water. Rather, a reasonable factfinder could conclude she denied him water "maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320–21, 106 S. Ct. 1078, 1085 (1986); see also Ort v. White, 813 F.2d 318, 325 (11th Cir. 1987) (explaining that a prison official would violate the Eighth Amendment if he "acted maliciously or sadistically toward [a prisoner] in denying him water").

Viewing the facts and drawing all reasonable inferences in the light most favorable to Spires, see Rioux, 520 F.3d at 1274, we conclude he has shown Officer Thomas committed a clear violation of his rights under the Eighth Amendment.

2.

We turn next to whether Spires has shown deliberate indifference on the part of Deputy Warden Paul. We conclude, contrary to the district court, that Spires's evidence on this point is sufficient to survive summary judgment.

Deputy Warden Paul was notified by Spires's letter on October 4, 2010 that Spires had no "safe drinking water" in his cell for seven days and that he had resorted to drinking from his toilet. Seven days of no safe drinking water and the

exposure to excrement that comes from having to drink from a toilet creates an obvious health risk. And the Supreme Court has told us that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842, 114 S. Ct. at 1981. Thus, the evidence establishes Deputy Warden Paul had "subjective knowledge of a risk of serious harm" to Spires. See McElligott, 182 F.3d at 1255.

Spires has also shown that Deputy Warden Paul disregarded that risk and was not merely negligent in doing so. See id. Deputy Warden Paul says he responded reasonably after learning Spires was without running water because he contacted the unit secretary about Spires's broken sink and learned that a work order was pending. But Deputy Warden Paul took other actions that suggest he never contacted the secretary. In response to Spires's letter informing him of the broken sink, Deputy Warden Paul wrote to Spires: "You have no water in your cell in which to drink from, should have thought of the consequences before you got caught with dope!" A jury could reasonably discredit Deputy Warden Paul's uncorroborated assertion that he checked with the secretary about repairing Spires's sink based on the fact that Deputy Warden Paul expressly told Spires he deserved to have "no water in [his] cell." The attitude toward Spires's lack of drinking water that Deputy Warden Paul expressed in his note is simply inconsistent with the actions Paul says he took to remedy the situation. And aside

14

from purportedly contacting the unit secretary, which a reasonable jury could disbelieve, Deputy Warden Paul does not mention taking any other steps to improve Spires's access to drinking water. Thus, viewing the evidence in the light most favorable to Spires, a reasonable factfinder could conclude Deputy Warden Paul took no action after learning Spires was at risk of serious harm due to deprivation of drinking water.

Deputy Warden Paul's note to Spires also makes clear that his inaction was not mere negligence. Read in the light most favorable to Spires, Deputy Warden Paul's statement indicates that he intended the continued deprivation of adequate water as punishment for Spires's marijuana possession. Intentional infliction of prolonged dehydration and exposure to human waste as punishment for any prison offense—let alone simple marijuana possession—is a clear Eighth Amendment violation. See Hope v. Pelzer, 536 U.S. 730, 743, 122 S. Ct. 2508, 2517 (2002) (discussing this Court's Ort decision and explaining that "deny[ing] [a prisoner] water as punishment" violates the Eighth Amendment (quotation omitted)). Therefore, we conclude his evidence is sufficient to overcome summary judgment on his claim that Deputy Warden Paul violated his rights under the Eighth Amendment.

## IV.

Because Spires has raised a genuine dispute of material fact on his claims

15

that the defendants violated his Eighth Amendment rights, the district court's grant of summary judgment in their favor is reversed.  As mentioned above, the defendants' motion for summary judgment also raised the defense of qualified immunity as an alternative ground for summary judgment.  But since the district court did not rule on that issue, neither do we.  On remand, the district court must decide, in the first instance, whether such immunity applies.

**REVERSED AND REMANDED.**