[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12445
Non-Argument Calendar
_____

D.C. Docket No. 5:17-cv-00306-MCR-GRJ

VICTOR DONTAVIOUS STALLWORTH,

Plaintiff - Appellant,

versus

WILKINS, et al.

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(January 17, 2020)

Before MARTIN, JORDAN, and TJOFLAT, Circuit Judges.

PER CURIAM:

Victor Stallworth, a pro se plaintiff, appeals the sua sponte dismissal of his 42 U.S.C. § 1983 civil rights complaint for failure to state a claim.  After careful review, we reinstate one of Stallworth's First Amendment claims against Captain Williams and Captain Billingsey and vacate the dismissal of his Eighth Amendment claim against an unnamed mental health counselor.  We affirm the district court's dismissal of all other claims.

## I.

Stallworth, a Florida prisoner, filed a pro se civil rights complaint against seven prison officials[1] under 42 U.S.C. § 1983.  He alleged these officials violated his rights under the First, Eighth, and Fourteenth Amendments.  Stallworth requested a declaratory judgment, compensatory and punitive damages, and "[a]ny additional relief [the] court deems [j]ust[,] proper and equitable."

In his complaint, Stallworth asserted that prison officials began treating him poorly after he filed grievances against correctional officers for taking his digital radio.  He says they threatened him with "excessive force and chemical agents," and spat on him through his cell window.  Over the next five months, Stallworth says various prison officials falsely accused him of participating in a prison riot

---

[1] Stallworth's original complaint named prison grievance coordinator Ms. Wilkins, Assistant Warden Ponder, Captain Williams, Captain Billingsey, Captain Gainnie, Sergeant Richardson, and Sergeant Heffell as defendants.  All defendants were employees of Florida's Gulf Correctional Institution, where Stallworth was incarcerated at the time of the alleged constitutional violations.

and denied him a meatless diet, clean meal trays, cold drinking water, bedsheets, clean laundry, a working ventilation fan, outdoor recreation, mental health care, and medical attention. Stallworth filed over 20 formal and informal grievances raising these issues. Stallworth also described that various officials failed to respond to his formal and informal grievances and told Stallworth "maybe" he would receive a diet change, clean meal trays, bedsheets, cold water, and outdoor recreation "if [he] stop[ped] filing grievances." Stallworth says he became "very sick" and suffered "a few stomach viruses," vomiting, fever, and constipation from having to eat off meal trays covered in "black mold and mildew."

The court granted Stallworth leave to proceed in forma pauperis ("IFP"). Because Stallworth was a prisoner proceeding IFP, a magistrate judge screened Stallworth's complaint under 28 U.S.C. § 1915(e) and found Stallworth failed to state any plausible Fourteenth Amendment claims. The magistrate judge dismissed Stallworth's First and Eighth Amendment claims and instructed Stallworth to file an amended complaint alleging physical injury in order to be eligible to receive compensatory or punitive damages, as required by the Prison Litigation Reform Act ("PLRA"). See 42 U.S.C. § 1997e(e) ("No federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury"). While the court noted Stallworth's stomach virus would qualify as a physical injury, it held Stallworth's allegations did "not

3

plausibly suggest that [the named prison officials] had anything to do with the dirty meal trays or [Stallworth's] grievance complaining about the meal trays."  The court acknowledged Stallworth was also "entitled to seek nominal damages," because his complaint prayed for "any additional relief" the court found proper.

Stallworth amended his complaint and maintained his request for declaratory relief and compensatory and punitive damages, but dropped his prayer for "any other relief."  The magistrate judge dismissed this "practically identical" amended complaint for the same infirmities as before.  The court gave Stallworth one more chance to amend his complaint, warning him to forego compensatory or punitive damages and advising him to seek nominal damages only.

Stallworth amended his complaint a second time.  Stallworth named two new "John Doe" defendants: a "Food Service Supervisor" and a "Mental Health Counselor."  Stallworth alleged the Food Service Supervisor violated his Fourteenth Amendment right to due process by ignoring Stallworth's repeated grievances about the moldy food trays and his need for a meatless diet.  Stallworth also alleged the Mental Health Counselor violated his Eighth and Fourteenth Amendment rights by ignoring Stallworth's requests for mental health treatment for "cold sweats, flash backs, hearing voices[,] and depression."  Stallworth emphasized that he "had to [a]ttempt to commit[] suicide . . . just to get seen by Mrs. John Doe Mental [H]ealth Counselor."

4

The court dismissed his complaint once again, ruling that Stallworth did not plausibly state Eighth or Fourteenth Amendment claims against the named defendants and had not "compl[ied] with a Court order" to request nominal damages for his First Amendment claims. The court dismissed Stallworth's claims against the John Doe defendants because Stallworth "cannot proceed with this case solely against two unnamed [d]efendants." This is Stallworth's appeal.

## II.

This Court reviews de novo the dismissal of a complaint for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). Mitchell v. Farcass, 112 F.3d 1483, 1489–90 (11th Cir. 1997). Dismissal under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal under Federal Rule of Civil Procedure 12(b)(6). Id. To prevent dismissal under Rule 12(b)(6), a plaintiff must allege sufficient facts to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). Claims are plausible when the plaintiff pleads facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Pro se pleadings such as Stallworth's are liberally construed and held to a less stringent standard than counseled pleadings. See Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

5

### III.

### A.

Stallworth contends Grievance Coordinator Ms. Wilkins, Assistant Warden Ponder, and the unnamed food service supervisor violated the Fourteenth Amendment's guarantee of due process by failing to acknowledge or respond to his grievances, in violation of the prison's procedures. However, "a prison grievance procedure does not provide an inmate with a constitutionally protected interest." Bingham v. Thomas, 654 F.3d 1171, 1177 (11th Cir. 2011) (per curiam). Because Stallworth's interest in the prison grievance procedures is not constitutionally protected, he cannot state a claim that prison officials denied him due process of law by violating these procedures. See id.

### B.

Next, Stallworth argues he stated First Amendment retaliation claims against seven prison officials: Captain Williams, Captain Billingsey, Captain Gainnie, Sergeant Heffel, Sergeant Richardson, grievance coordinator Ms. Wilkins, and Assistant Warden Ponder. We reverse the district court's dismissal of Stallworth's retaliation claims against Captain Williams and Captain Billingsey stemming from the allegedly filthy meal trays, but we affirm the district court's dismissal of Stallworth's other First Amendment claims.

"First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment." Boxer X v. Harris, 437 F.3d 1107, 1112 (11th Cir. 2006). "A prisoner can establish retaliation by demonstrating that the prison official's actions were the result of his having filed a grievance." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (quotation marks omitted). "To state a [F]irst [A]mendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right." Thomas v. Evans, 880 F.2d 1235, 1242 (11th Cir. 1989). Thus, even though Stallworth fails to state Eighth Amendment claims for many of the indignities he believes he has suffered, see infra Part III.C.2, he plausibly states two First Amendment retaliation claims on the same facts.

Accepting the allegations in his complaint as true, Stallworth adequately alleges Captain Williams and Captain Billingsey retaliated against him for filing grievances by ignoring his complaints about filthy meal trays. Stallworth's amended complaint recounts that he filed an informal grievance on May 15, 2017, about "the confinement trays not being washed and cleaned properly" and containing "black mold and mildew." This grievance, Stallworth says, was ignored. Stallworth told Captain Williams about the black mold and mildew on the meal trays three days later. Stallworth alleges Williams responded, "[S]top filing

7

grievances and maybe you will get a clean tray." The next day, Stallworth stopped Captain Billingsey to report the dirty, mildewed, and moldy trays. Stallworth alleges Billingsey said, "[S]top filing grievances and you will get a clean tray." Stallworth's complaint also alleged "[t]he captains and sergeants mention[ed] in this complaint ha[ve] the authority to . . . call food service" and order an alternate meal "for any inmate." Stallworth also says ordinarily "both captain's [sic] would've done their job" and presumably replaced his meal tray "if the meal trays were missing portions of food, late[,] or not served at all," but both captains refused to replace his dirty trays.

Stallworth plausibly states a claim that Captains Williams and Billingsey refused Stallworth's requests for a clean meal tray in retaliation for the grievances Stallworth had filed. Because Stallworth alleges that he requested help for the dirty meal trays and, in response, two prison officials denied help while expressing displeasure with Stallworth's grievances, there is a sufficient causal link between the grievances and the denial of a clean meal tray. See Alvarez v. Sec'y, Fla. Dep't of Corr., 646 F. App'x 858, 864–65 (11th Cir. 2016) (per curiam) (unpublished) (holding a prisoner plaintiff stated a retaliation claim by alleging he filed a request to be transferred, an officer responded, "We have a place for you," and the prisoner was then placed in disciplinary confinement). Although the district court found it significant that Stallworth did not allege Captain Williams

8

and Captain Billingsey dirtied the trays themselves, officers may retaliate by failing to carry out their duties.  See Hilton v. Sec'y for Dep't of Corr., 170 F. App'x 600, 603–04 (11th Cir. 2005) (unpublished) (holding a prisoner stated a retaliation claim by alleging officers "fail[ed] to notify him that family members had arrived for visiting hours").  Notably, Stallworth alleged both captains had the authority to "call food service and [place] order[s]" and that they supervised the provision of meal trays.  Accepting these facts as true, Stallworth states a claim that Captains Williams and Billingsey retaliated against him in violation of the First Amendment.

Stallworth also successfully alleges that he can recover compensatory and punitive damages for this retaliation.  This Court has held that the PLRA requires a prisoner plaintiff to allege he suffered more than de minimis physical injury to recover compensatory or punitive damages.  See Brooks v. Warden, 800 F.3d 1295, 1307 (11th Cir. 2015); see also 42 U.S.C. § 1997e(e).  "[W]ell established Eighth Amendment standards" guide our analysis of whether a physical injury is de minimis.  Harris v. Garner, 190 F.3d 1279, 1286–87 (11th Cir. 1999), reh'g en banc granted, vacated in part on other grounds, 216 F.3d 970 (11th Cir. 2000).

Stallworth has made a showing of physical injury that is not merely de minimis.  Stallworth alleged he became "very sick from the confinement trays having mildew, black mold, and not being washed properly."  Stallworth says the

filth on the trays caused him "to have a few stomach viruses, throw up, fever[,] and constipation." As a result of these injuries, Stallworth "had to go to sick call twice" and sought medical attention a third time but was refused "because of his complaints." See Thompson v. Sec'y, Fla. Dep't of Corr., 551 F. App'x 555, 557 n.3 (11th Cir. 2014) (per curiam) (unpublished) (observing the de minimis standard has been met by "an observable or diagnosable medical condition requiring treatment by a medical care professional" and concluding the plaintiff had "alleged enough to avoid dismissal at this stage"). Stallworth's maladies were not de minimis. Compare id. at 556–57 (holding a prisoner's allegations of "headaches, weakness, cold sweats, dizziness, weight loss, numbness in [the] left arm, and high blood sugar" "rose above the de minimis threshold"), with Harris, 190 F.3d at 1287 ("A 'dry shave,' without more, is simply not the kind of 'injury' that is cognizable under section 1997e(e)."). Because Stallworth has alleged sufficient physical injury within the meaning of § 1997e(e), the PLRA permits him to seek compensatory and punitive damages for Captain Williams and Captain Billingsey's allegedly retaliatory actions in refusing his requests for clean meal trays.

Stallworth's other retaliation claims, however, cannot proceed. Stallworth has not alleged physical injury to support his claims that prison officials retaliated by ignoring his grievances and denying him a meatless diet, cold drinking water,

10

bed sheets, outdoor recreation, and clean laundry.[2]  While these retaliation claims could be cognizable in an action for nominal damages, as the district court identified, Stallworth's second amended complaint does not request nominal damages.  Beyond that, Stallworth does not provide adequate support for his allegation that Assistant Warden Ponder and grievance coordinator Ms. Wilkins maintained "a policy and custom to shred grievances, throw them away, [and] fail to respond to them in a threat of intimidation" to stop Stallworth from filing grievances.[3]  Thus, the district court properly dismissed Stallworth's remaining claims that prison officials retaliated against him.  See Harris, 190 F.3d at 1290 (affirming dismissal of claims for compensatory and punitive damages because the claims were unsupported by an allegation of physical injury).

---

[2] Stallworth's amended complaint describes that eating meat served by the prison "ma[de] him sick."  When he asked Captain Williams and Captain Billingsey to provide him a meatless diet, Captain Billingsey "laughed" and both captains told him to stop filing grievances and maybe he would receive a diet change.  However, Stallworth does not describe the severity or kind of sickness he suffered from eating meat.  As a result, we cannot say his injury was more than de minimis.  Without more facts, we must affirm dismissal of this claim.

[3] In support of his First Amendment retaliation claim against Assistant Warden Ponder and Ms. Wilkins, Stallworth points to two declarations from fellow inmates, which Stallworth filed along with his objections to the magistrate judge's final report and recommendation.  At most, however, these affidavits reveal 1) Ponder ignored Stallworth's in-person questions about grievances and 2) a third prison official, Officer Owens, told Stallworth that his grievances were "more food for Ms. Wilkins['s] shredder."  Even at the motion to dismiss phase, these facts, relating only to Stallworth's grievances, do not plausibly evince a widespread policy of First Amendment retaliation.  See, e.g., Craig v. Floyd County, 643 F.3d 1306, 1312 (11th Cir. 2011) (holding a prisoner's "own experience [was] at most, proof of a single incident of unconstitutional activity" and was not sufficient to impose liability under 42 U.S.C. § 1983 (alteration adopted and quotation marks omitted)).

11

C.

Stallworth also argues he has stated claims that nine officers—Ms. Wilkins, Assistant Warden Ponder, Captain Williams, Captain Billingsey, Captain Gainnie, Sergeant Heffel, Sergeant Richardson, the unnamed food supervisor, and the unnamed mental health counselor—violated the Eighth Amendment by creating inhumane prison conditions.

The Eighth Amendment prohibits "cruel and unusual punishments," "the unnecessary and wanton infliction of pain," and "deliberate indifference to a substantial risk of serious harm to a prisoner." Bass v. Perrin, 170 F.3d 1312, 1316–17 (11th Cir. 1999) (quotation marks omitted). Harsh prison conditions, "alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standard of decency." Hamm v. DeKalb County, 774 F.2d 1567, 1572 (11th Cir. 1985) (quotation marks omitted).

1.

First, Stallworth's complaint alleges the mental health counselor displayed deliberate indifference to his declining mental health. See, e.g., Waldrop v. Evans, 871 F.2d 1030, 1036 (11th Cir. 1989) ("[P]rison officials have an obligation to take action or to inform competent authorities once the officials have knowledge of a prisoner's need for medical or psychiatric care."). Stallworth's complaint alleges

12

although he had a "mental health plan," he was never seen by the mental health counselor for "an initial interview" after arriving at the prison.  Stallworth says he later filed a request with the prison mental health counselor for mental health care to treat his "cold sweats, flash backs, hearing voices[,] and depression," but the counselor never answered.  Stallworth filed a formal grievance a few weeks after that to draw attention to his request for mental health counseling, but this grievance was also ignored.  Stallworth says he attempted to commit suicide approximately two weeks after this grievance, and only then was he seen by the mental health counselor.

This Court has previously held that deliberate indifference can manifest in an official's failure to provide adequate mental health care.  See Steele v. Shah, 87 F.3d 1266, 1267–1270 (11th Cir. 1996) (holding a prison psychiatrist would violate the Eighth Amendment by conducting a one-minute "initial screening" of an inmate with a documented mental health treatment plan, then cancelling the inmate's medications).  But we need not decide whether Stallworth states a claim for deliberate indifference in the first instance.  The district court dismissed this Eighth Amendment claim because it ruled against Stallworth on all of his other claims and concluded that Stallworth could not "proceed with this case solely against . . . unnamed Defendants."  In this opinion, we reinstate one of Stallworth's First Amendment claims against Captain Williams and Captain Billingsey.  See

13

supra Part III.B.  Stallworth is therefore now entitled to consideration of the merits

of his deliberate indifference claim and will have the opportunity to seek the

identity of the proper defendants through discovery.  See Clark v. Putnam County,

168 F.3d 458, 463 (11th Cir. 1999) (declining to address an issue the district court

had not reached in the first instance); see also Brown v. Sikes, 212 F.3d 1205, 1209

n.4 (11th Cir. 2000) (acknowledging "the difficulties faced by a prisoner in

identifying alleged wrongdoers before filing a complaint" and noting appeals

courts "have directed district courts to assist prisoners in discovering the identity of

the proper defendants").  We therefore vacate and remand the district court's

dismissal of Stallworth's Eighth Amendment claim against the unnamed mental

health counselor for consideration in the first instance.

2.

We agree with the district court, however, that Stallworth's other Eighth

Amendment claims do not pass muster.  To start, Stallworth's allegations about

poor ventilation in his cell do not give rise to an Eighth Amendment claim.  While

"the Eighth Amendment applies to prisoner claims of inadequate cooling and

ventilation" Chandler v. Crosby, 379 F.3d 1278, 1294 (11th Cir. 2004),  we have

held that "the Eighth Amendment is concerned with both the severity and the

duration of prisoner's exposure to inadequate cooling and ventilation," and "a

prisoner's mere discomfort, without more, does not offend the Eighth

Amendment," id. at 1295 (quotation marks omitted).  Stallworth alleges broken

exhaust fans made his cell "very hot" and "[s]auna"-like, "causing extreme

discomfort."  However, Stallworth does not allege details about how long the fans

were broken.  Without facts indicating the duration of Stallworth's discomfort, we

cannot say he stated a claim under the Eighth Amendment.

Likewise, Stallworth has not stated an Eighth Amendment claim on the

grounds that he slept on an "unsanitary bare plastic mattress" without bedsheets for

one week.  See Hamm, 774 F.2d at 1569, 1575 (holding that the fact a prisoner

"temporarily had to sleep upon a mattress on the floor or on a table is not

necessarily a constitutional violation," even though "the floor and the linens

provided were unsanitary").

Neither does Stallworth state a claim that receiving food on moldy meal

trays violated the Eighth Amendment.  While "[t]he Constitution requires that

prisoners be provided reasonably adequate food," this Court has held that food

"occasionally contain[ing] foreign objects" and falling below food preparation

standards "does not amount to a constitutional deprivation."  Id. (quotation marks

omitted); see also Meyers v. Clarke, 767 F. App'x 437, 439 (4th Cir. 2019) (per

curiam) (unpublished) (holding prisoner's allegations of "stale and moldy" food

insufficient to state an Eighth Amendment claim); Oliver v. Fuhrman, 739 F.

App'x 968, 969–70 (11th Cir. 2018) (per curiam) (unpublished) (holding that

15

allegations of "toxic" food served on dirty dishes failed to state a claim); Williams v. Berge, 102 F. App'x 506, 507 (7th Cir. 2004) (per curiam) (unpublished) (holding the provision of "stale," "moldy," and "rancid" foods did not state claim). Stallworth similarly does not state a claim that being refused an alternative, meat-free meal violates the Eighth Amendment. See Robbins v. Robertson, 782 F. App'x 794, 805 (11th Cir. 2019) (unpublished) (observing this Court has never held that "the Eighth Amendment requires prison officials to indulge inmates' dietary preferences").

Stallworth also has not sufficiently alleged that the lack of cold drinking water in his cell for 14 days violated the Eighth Amendment. We have recognized that "deprivation of potable water for several days is a denial of a basic need and the minimal civilized measure of life's necessities." Spires v. Paul, 581 F. App'x 786, 793 (11th Cir. 2014) (per curiam) (unpublished) (alterations adopted and quotation marks omitted). However, Stallworth did not allege that he was denied all drinking water. He alleges he had no access to "cold drinking water." Because Stallworth's complaint implies he had access to some drinking water, whether lukewarm or hot, we cannot say Stallworth stated an Eighth Amendment claim on these facts.

Stallworth further alleges that while he was placed in administrative confinement, he was denied outdoor recreation on at least six occasions, and, at

16

some point, he went without outdoor recreation for six weeks. Stallworth says the officers who denied him recreation told Stallworth he "shouldn't have been involve[d] with the June 21st[,] 2017 riot" and that Stallworth couldn't "receive outdoor recreation . . . for being housed in [the dorm] with inmates accused of rioting." These allegations fail to state an Eighth Amendment claim. This Court has held that "complete denial . . . of outdoor exercise, although harsh, [does] not violate the Eighth Amendment" when accompanied by "penological justification." Bass, 170 F.3d at 1316–17 (quotation marks omitted). Stallworth's complaint makes clear the officers had penological justification to withhold outdoor recreation from Stallworth and other inmates accused of rioting. See id. (holding prison had penological justification to deny outdoor exercise to inmates disciplined for an escape attempt). We affirm the district court's dismissal of this claim.

Stallworth also alleges he could not "exchange [his] laundry" and was unable to "wash [his] clothes or bed sheets" for 30 days. On the facts Stallworth has pled, this state of affairs does not rise to the level of a constitutional violation. Stallworth has not pled facts showing any harm or deprivation of necessities resulting from the month-long lack of clean linens and clothing. Cf. Myers v. Ind. Dep't of Corr., 655 F. App'x 500, 503–04 (7th Cir. 2016) (per curiam) (unpublished) (holding an inmate who "criticize[d] the laundering process" in the prison didn't "allege that it left any residue that might transmit serious diseases" or

17

created "a serious health risk").  We thus affirm the district court's dismissal of this claim.

Finally, we affirm the district court's dismissal of Stallworth's Eighth Amendment claims against Assistant Warden Ponder and Ms. Wilkins, the grievance coordinator.  Stallworth argues Assistant Warden Ponder and Ms. Wilkins should be vicariously liable for the Eighth Amendment violations of other officers.  However, supervisory officials may not be held vicariously liable under § 1983 for the unconstitutional acts of their subordinates.  Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003), abrogated in part on other grounds by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010).

**AFFIRMED IN PART, REVERSED IN PART, VACATED AND REMANDED IN PART.**